IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETH FOX,<br>           Plaintiff,<br>v.<br>GO2U ABA HOME THERAPY INC.,<br>           Defendant. | FILED ELECTRONICALLY<br>ON SEPTEMBER 23, 2021<br><br>ARBITRATION-ELIGIBLE |

## COMPLAINT

Beth Fox ("Plaintiff") brings this lawsuit against Go2U ABA Home Therapy Inc. ("Defendant"), seeking all available relief associated with the following legal claims: (i) failure to pay minimum wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*; (ii) failure to pay promised wages under common law breach of contract principles and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1, *et seq.*; and (iii) unjust enrichment.

## JURISDICTION AND VENUE

1. Jurisdiction over the FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. Jurisdiction over the state law claims is proper under 28 U.S.C. § 1367.

3. Venue in this Court is proper under 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff resides in Philadelphia, PA (Philadelphia County).

5. Defendant is a corporation headquartered in Horsham, PA (Montgomery County).

**FACTS**

6. Defendant provides therapy services to children with autism and hires Registered Behavior Technicians to provide such services.

7. In May 2020, Defendant hired Plaintiff to a Registered Behavior Technician position and required her to sign an offer letter stating that she would work for Defendant as an "independent contractor." *See* Exhibit A. However, as a matter of economic reality, Plaintiff was Defendant's employee because, *inter alia*: (i) the services she provided were integral to Defendant's business; (ii) she was closely supervised by Defendant's managers; and (iii) she was was not required to make substantial investments in tools, equipment, or other facilities.

8. As reflected in the offer letter, Defendant promised to pay Plaintiff $21.00/hour and stated that "[p]ayment will be made to [Plaintiff] upon receipt of payment from insurer or client for such services and in proportion to the to the reimbursed amount from the insurer or Client." Exhibit A at pg. 1.

9. Relying on the above provision, Defendant generally has refused to pay Plaintiff based on representations by Will Urbano – Defendant's CEO – that Defendant has not been reimbursed for the services provided by Plaintiff. These representations are false.

10. As a result of Defendant's conduct, Plaintiff has received almost no compensation for the work she performed for Defendant. Specifically, during Plaintiff's employment – which lasted from May 2020 until August 2020 – Plaintiff worked a total of 138.5 billable hours valued at $2,908.50 (138.5 hours X $21). Yet, Defendant has paid Plaintiff a grand total of only $465.00.

11. In August 2020, Plaintiff was forced to resign due to Defendant's refusal to compensate her for all of her hard work. She thereafter attempted to resolve this matter

informally. Because such efforts were unsuccessful, she is forced to bring the instant lawsuit.

## COUNT I – FLSA

12.     The FLSA requires that employees be paid a minimum hourly wage of $7.25. *See* 29 U.S.C. § 206(a)(1)(C).

13.     Defendants violated the FLSA by failing to pay Plaintiff the required minimum wage for her work hours.

14.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions and, as such, willfully violated the FLSA.

## COUNT II – PMWA
### (Alleging PMWA Violations)

15.     The PMWA requires that that employees be paid a minimum hourly wage of $7.25. *See* 43 P.S. § 333.104(a.1).

16.     Defendants violated the PMWA by failing to pay Plaintiff the required minimum wage for her work hours.

## COUNT III – Breach of Contract

17.     Defendant had a contractual obligation to pay Plaintiff $21 for each hour she worked per the promise described at paragraph 8 above.

18.     Defendant breached this contractual obligation by failing to pay Plaintiff as required.

## COUNT IV – PWPCL

19.     The PWPCL provides Plaintiff and the class members with an "additional statutory remedy when the employer breaches a contractual obligation to pay earned wages." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990). These additional remedies include (i) liquidated damages equaling 25% of the unpaid wages, *see* 43 P.S. § 260.10, and (ii) litigation

costs and reasonable attorney's fees, *see id.* at § 260.9a(f).

20. Defendant has violated the PWPCL because, as asserted in Count III above, it has breached its contractual wage obligations to Plaintiff.

### **COUNT V – Unjust Enrichment (Pled in the Alternative)**

21. This unjust enrichment claim is pled in the alternative and should be reached if the Court or factfinder rejects Plaintiff's breach of contract claim.

22. The unjust enrichment doctrine applies when the plaintiff has conferred a benefit that has been appreciated by defendant under inequitable circumstances. *See EBC, Inc. v Clark Building Systems, Inc.*, 618 F.3d 253, 273 (3d Cir. 2010).

23. Here, the above elements are satisfied based on the facts pled in this Complaint.

### **JURY DEMAND**

Plaintiff demands a jury trial.

### **PRAYER FOR RELIEF**

Plaintiff seeks the following relief:

A. Unpaid minimum wages and promised wages

B. Prejudgment interest;

C. Liquidated damages per the FLSA and the PWPCL;

D. Litigation costs, expenses, and attorneys' fees per the FLSA, the PMWA, and the PWPCL; and

E. Such other and further relief as the Court deems just and proper.

Date: September 23, 2021

Respectfully,

_____
Peter Winebrake
Michelle L. Tolodziecki

>                                        Winebrake & Santillo, LLC
>                                        715 Twining Road, Suite 211
>                                        Dresher, PA 19025
>                                        (215) 884-2491
>
>                                        Plaintiff's Lawyers

# Exhibit A



300 Welsh Road<br>
Horsham, PA 19044<br>
888.973.0901<br>
www.go2uaba.com

May 4, 2020

<u>Via Electronic Mail</u>:
▇▇▇▇▇▇▇▇▇▇▇▇▇▇
Beth Fox
Wycote, PA 19095

**Re:** <u>Offer Letter</u>

Dear Beth:

On behalf of Go2U ABA Home Therapy, I am very pleased to offer you the position of Registered Behavior Technician as an independent contractor via the within offer letter.

1. <u>Services</u>

Beth Fox (hereinafter "Contractor") will provide Services to Go2U ABA Home Therapy (hereinafter "Company") in Contractor's capacity as a Registered Behavior Technician. Such services may include both private pay and insurance reimbursement cases, which will take place in the field and via telehealth technology at private residences, daycare centers, preschools, schools, or other suitable private or publicly-accessible dwellings or buildings. The Services will include actual, billable time devoted to direct client therapy. Services, and the amount of time incurred for such Services, must be authorized in advance by the client's insurance provider or, in the case of non-insurance cases, by the client.

2. <u>Consideration</u>

In consideration for the services to be performed by Contractor under this Agreement, the Company will pay twenty one dollars per hour for: (1) client-paid; or (2) insurance-authorized and insurance-paid procedures. Payment will be made to Contractor upon receipt of payment from insurer or client for such services and in proportion to the reimbursed amount from the insurer or Client.

3. Contingencies and RBT examination

This offer is contingent upon:

(a) Contractor obtaining and maintaining necessary clearances;
(b) Satisfactory recommendation from Contractor's professional references;
(c) Contractor obtaining/maintaining professional competency and certificates or licenses as necessary including, but not limited to, becoming a Registered Behavior Technician within 45 days of the date of this Agreement; and
(d) Availability of ABA cases.

4. Independent Contractor

Nothing herein shall be construed to create an employer-employee relationship between the Company and Contractor at this time. Contractor is an independent contractor and not an employee of the Company. The consideration set forth in paragraph number 2 ("Consideration") above shall be the sole consideration due Contractor for the services rendered hereunder. It is understood that the Company will not withhold any amounts for payment of taxes from the compensation of Contractor hereunder. Contractor will not be an employee of the Company at this time and not unless and until an offer of employment is made and accepted in the future.

5. Confidentiality and Non-Disparagement

In the course of Contractor performing services under this Agreement, the parties recognize that Contractor will come in contact and become familiar with information the Company or its subsidiaries or affiliates may consider confidential or proprietary. This information may include, but is not limited to, information pertaining to the Company's financials, billings, employee records, systems, practices, and trade secrets, or existence of this agreement, which information may be of value to a competitor. Contractor agrees to keep all such information confidential and not to discuss or divulge it to anyone other than appropriate Company personnel or the Company's designees and only with Company's prior approval.

Contractor agrees to comply with all HIPAA regulations and Company policies governing client confidentiality and protected information.

Contractor agrees to not disparage the Company, its owners, principals, management, staff, employees, independent contractors, clients, or any individual or entity associated with the Company to any third party in any way, shape, form, or by any means or method. Contractor agrees further not to cause any non-party to this Agreement to disparage the Company, its owners, principals, management, staff, employees, independent contractors, clients, or any individual or entity associated with the Company to any third party in any way, shape, form, or by any means or method.

Contractor agrees that any breach by Contractor of the confidentiality, non-disparagement or non-disclosure terms of this Agreement shall entitle Company to monetary damages in the liquidated amount of one hundred thousand dollars payable by Contractor to Company.  Contractor also

agrees that if Contractor breaches the confidentiality, non-disparagement or non-disclosure terms of this Agreement, Company shall be entitled to reasonable attorney's fees from Contractor in connection with enforcing the terms of the confidentiality, non-disparagement or non-disclosure terms of this Agreement. Furthermore, Contractor agrees to hold harmless and indemnify Company for any claim asserted by any third party for Contractor's breach of the confidentiality, non-disparagement or non-disclosure terms of this Agreement.

6. Term

Either party may terminate this Agreement upon notice to the other party. In the event Contractor terminates this Agreement, Contractor agrees to provide Company with at least six (6) weeks written notice.

7. Non-solicitation

During the term of this agreement, and for a period of two (2) years immediately thereafter, Contractor agrees not to solicit any employee, independent contractor or client of Company on behalf of any other business enterprise, nor shall Contractor induce any employee, independent contractor or client of the Company to terminate or breach an employment, contractual or other relationship with Company.

8. Severability

The provisions of this Agreement are severable, and if any one or more provisions may be determined to be unenforceable, in whole or in part, the remaining provisions and any partially unenforceable provisions to the extent enforceable shall nevertheless be binding and enforceable.

9. Governing law

This Agreement shall be construed in accordance with the laws of Pennsylvania. Contractor consents to arbitration in the Commonwealth of Pennsylvania as the sole method for resolving any disputes arising under this Agreement. Contractor expressly waives the jurisdiction of the Court regarding the resolution of any disputes arising under this Agreement.

10. Entire agreement

This letter of understanding contains the entire agreement between Company and Contractor and with respect to the subject matter of this Agreement. Contractor confirms that Contractor has had an opportunity, at Contractor's discretion, to have this Agreement reviewed by counsel in advance of executing the Agreement. This Agreement shall be construed as having been drafted by the parties mutually. This Agreement supersedes all prior understanding, agreements, or representations.
---

If the above terms are acceptable, please date and sign where indicated below.

Please do not hesitate to contact us with any questions.

Thank you, Beth – we look forward to you joining the team!

Best regards,

*Go2U ABA Home Therapy*

Go2U ABA Home Therapy

------

*Accepted and agreed*:

DocuSigned by:

*Beth Fox*

060DE6116C8C4F0...

Beth Fox

Date: 5/6/2020